■ JOSEPH NUNES et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 62380.) — Harvey, J. Appeal from a judgment in favor of claimants, entered March 5, 1984, upon a decision of the Court of Claims (Hanifin, J.).

Claimants were the owners of approximately 82 acres of property situated in Schoharie County, about one fifth of which lies within the Village of Richmondville. In 1978, there was a partial taking by the State of just over 28½ acres of claimants' lands for the construction of an interstate highway. Claimants filed the instant claim in August 1978 seeking $555,000 in damages. Following a trial in the Court of Claims, it was determined that the value of the State's taking was $25,132. Since claimants had received $25,250 as the result of an advance payment agreement entered into with the State, the Court of Claims determined that claimants had received $118 in excess of the award and the State was granted recovery of the overpayment.

Thereafter, claimants appealed to this court. In our prior decision (91 AD2d 1135, 1136), we held that the Court of Claims erred in failing to consider the value arrived at by an appraisal (hereinafter the Pomeroy appraisal) which the State used when seeking Federal funding for highway construction. Through the use of the Pomeroy appraisal, this court fixed claimants' damages at $45,150. The Court of Appeals modified this court's decision (59 NY2d 745, 748), holding that we erred in using the Pomeroy appraisal as a basis for establishing the amount of claimants' damages since that appraisal had never been received in evidence at trial. The Court of Appeals also noted that the Court of Claims should have considered the Pomeroy appraisal in determining its award (*supra,* at 747). We subsequently remitted the matter to the Court of Claims (96 AD2d 608, 609), which ultimately determined claimants' damages to have been $35,715 plus interest. Once again claimants appeal, seeking, *inter alia,* an award of $45,150.

On reconsidering its award to claimants following our remittal, the Court of Claims included the Pomeroy appraisal in its analysis. As a result, that court had before it three appraisals, each of which expressed a different opinion as to the highest and best use of claimants' lands. Thus, the Court of Claims was justified in identifying the commonalities existing between the appraisals which were supported by the evidence in the record in fashioning an equitable award (*see, Karker v State of New York,* 83 AD2d 655, 655-656).

At trial, the State's appraiser opined that, with the exception of the residence and surrounding lands, all of claimants' property had the same highest and best use, i.e., as recreational

lands. The State's appraiser therefore arrived at a $500 per acre value for 80 of claimants' 82 acres. By contrast, the State had previously used the Pomeroy appraisal to demonstrate anticipated costs of settling landowner claims when seeking Federal funding. The Pomeroy appraisal divided claimants' lands into two economic units, finding that the approximately 70 acres outside the Village limits had a highest and best use as a hobby farm (valued at $450 per acre), and that the balance of the land which was situated within the Village had potential for commercial development (valued at $1,400 per acre).

The Pomeroy appraisal's finding of commercial value for claimants' lands in the Village concurred with the findings of claimants' appraiser. The Court of Claims could properly reject the findings of the State's appraiser presented at trial since they were diametrically opposed to the findings of both claimants' appraiser and the Pomeroy report previously relied on by the State. Claimants' appraiser concluded that over 70 acres of claimants' lands had development potential valued at $1,450 per acre. The court determined that it could not accept the opinion of either claimants' appraiser or the Pomeroy appraisal as to the acreage having development potential. The Court of Claims was of the opinion that only 8.26 acres of claimants' lands had any realistic development potential. The court accepted claimants' appraised value of $1,450 per acre for that acreage. The record supports the court's reasoning and determination since a large portion of claimants' lands had an extremely steep slope rendering commercial development unviable (*see, G. L. Root Oil v State of New York,* 78 AD2d 709, 710).

Finding as we do that the Court of Claims decision is amply supported by evidence in the record, it should be affirmed (*see, Arnold v State of New York,* 108 AD2d 1021; *Matter of Rochester Urban Renewal Agency v Lee,* 83 AD2d 770; *Tauzel v State of New York,* 82 AD2d 933; *see also, Matter of City of New York* [*Nelkin*], 51 NY2d 921, 923).

Finally, we note that the parties express disagreement regarding the effect of the Court of Appeals modification on the award of costs to claimant in our initial decision in this case (*see,* 91 AD2d 1135, 1137, *supra*). The Court of Appeals (59 NY2d 745, 748, *supra*) awarded costs to the State only for the appeal to that court; likewise, claimants were denied costs only for their cross appeal to that court. Thus, the Court of Appeals modification of our earlier decision did not deprive claimants of their entitlement to costs awarded by this court on that prior appeal (*see, Matter of Watts,* 49 AD2d 961, 961-962, *revd on other grounds* 31 NY2d 491; *see also,* 24 Carmody-Wait 2d, NY Prac § 148:197, at 718-719; § 148:207, at 729 [1968]).

Judgment affirmed, with costs of this appeal awarded to claimants. Casey, J. P., Weiss, Mikoll, Levine and Harvey, JJ., concur.